## Elverson's Estate

The facts appear from the third supplemental adjudication of

HENDERSON, J., Auditing Judge.—Two questions remain for my consideration: (1) The claim of Madame Patenotre for $56,500; and (2) the claim on behalf of Mrs. Elverson's Estate for the proceeds of 2500 shares of stock of the Hudson Motor Company.

As to the first claim, the parties have filed a stipulation admitting this claim with interest, upon condition that the payment thereof by the administrator shall be deferred to and subsequent to the repayment to the estate of Eleanore Mayo Elverson, deceased, of any amounts finally held to be due by the estate of James Elverson, Jr., deceased, to the estate of Eleanore Mayo Elverson, deceased, on account of transactions between the two estates subsequent to the

deaths of decedents and/or for shares of stock held by James Elverson, Jr., at the time of his death that shall finally be adjudged to have been the property of his wife and the proceeds thereof be awarded to her estate.

The stipulation does not fix the date from which interest shall run, and in my opinion it is due from the date of our testator's death.

As to the second claim, it appears that these shares of stock were, at the time of the testator's death, pledged as collateral for his debt at the Market Street National Bank. They had originally been purchased by Glendinning & Co. for Mrs. Elverson, who had a trading account with them and which account was guaranteed by Col. Elverson. On July 12, 1928, Glendinning & Co. delivered these shares to the Market Street National Bank, which used them as collateral for Col. Elverson's loan. Glendinning & Co. did not receive any cash payment for Mrs. Elverson's account when this delivery was made; they did, however, receive from the bank in exchange for the Hudson stock 4000 shares of International Combustion stock. They receipted for this stock for the account of Col. Elverson; they were, nevertheless, placed in and credited to the account of Mrs. Elverson. They were, furthermore, sold that same day for her account and she was credited with the proceeds the next day.

On that day Hudson sold on the New York Stock Exchange at $83 "high," and were then worth $207,500; on that day Combustion sold at $56¼ "low," and hence the sale realized about $232,000, or $25,000 more than the Hudson was worth on that day; and hence the exchange benefited Mrs. Elverson by this sum.

The Combustion stock had been bought for Col. Elverson's account and belonged to him.

It appears that the dividends due on the Hudson stock on October 3, 1928, and January 18, 1929, were paid to Glendinning & Co. and credited to Mrs. Elverson's account. In the trading account the broker had carried these shares in his own name and hence the dividends were sent to him and he credited them to her. She declared the first dividend in her income tax return for 1928, after the colonel's death, and the second dividend was declared in her income return the following year by her executors. It was not shown that this testator knew of the receipt of these dividends by his wife. It was conceded that Mrs. Elverson's personal estate was derived entirely from her husband.

There is little dispute as to the facts—the question is, under these facts who owns the Hudson stock?

The claimant has succinctly stated the facts involved in his brief, and I adopt and quote the language:

"What actually did happen was that under directions not disclosed on the record, Glendinning delivered from Mrs. Elverson's account to the Market Street National Bank the 2500 shares of Hudson, and under directions not disclosed in the record the Market Street National Bank placed those securities as collateral for Col. Elverson's loan.

"The Market Street National Bank, under directions not disclosed in the record, delivered 4000 shares of Combustion to Glendinning for the account of James Elverson, Jr. (Exhibit 19), and Glendinning accepted them as such, and under directions not disclosed in the record, after having accepted them for the husband's account, placed them in the wife's account."

Thus we see it is admitted that the Hudson stock was purchased by Mrs. Elverson, was handed over to her husband and on the same day she received 4000 Combustion which was sold for $232,000, and this sum was placed to her credit.

Counsel for her estate contend that the Hudson shares are admitted as belonging to her, and that as the Combustion stock passed to her from her husband, it must be presumed to be a gift and not the purchase price of the Hudson shares, and, hence, the proceeds of the sale of Hudson should be awarded to her estate.

It should be recalled that both parties to this transaction are dead and the record affords no explanation as to it.

I am unable to follow the claimant's reasoning—why did the husband take back the Hudson stock? Surely not for safekeeping when at the same time he handed the wife 4000 Combustion. The natural way to look at the transaction is that it was an exchange of securities by which she was substantially benefited. The claim of Mrs. Elverson's estate is dismissed.

*Robert von Moschzisker* and *Ballard, Spahr, Andrews & Ingersoll,* for exceptions.

*Philip R. Hepburn, Charles J. Hepburn* and *Ellsworth C. Alvord,* contra.

SINKLER, J., April 29, 1932.—A careful consideration of the record and of the arguments of counsel bring us to the conclusion that the determinations of the auditing judge as set forth in his third supplemental adjudication are correct.

The exceptions thereto are dismissed and the adjudication is confirmed absolutely.